# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                                  Chapter 9
City of Detroit, Michigan,                              Case No. 13-53846
Debtor.                                                 Hon. Steven W. Rhodes
_____/

Maurikia Lyda, et al,
        Plaintiffs,

v.                                                      Adv. Proceeding
                                                        No. 14-04732

City of Detroit,
        Defendant.
_____/


### Supplemental Opinion
### Clarifying the Court's Bench Opinion
### Denying Plaintiffs' Motion for a Temporary Restraining Order and
### Granting Defendant's Motion to Dismiss;
### and
### Opinion Denying Plaintiffs'
### (1) Motions for Reconsideration; and
### (2) Motion to File a Second Amended Complaint


In this adversary proceeding, Maurikia Lyda, John Smith, Nicole Hill, Rosalyn Walker,

Annette Parham, Janice Ward, Sylvia Taylor, Scott Eubank, Joann Jackson, Tammika R.

Williams, the Michigan Welfare Rights Organization, Peoples Water Board, National Action

Network - Michigan Chapter, and Moratorium Now! challenge the actions of the Detroit Water

and Sewerage Department ("DWSD") in terminating service to thousands of residential

customers in the City of Detroit.

On September 29, 2014, in an opinion delivered in court, the Court denied the plaintiffs' motion for a temporary restraining order and to set a hearing for a preliminary injunction (Dkt. #20) and granted the City's motion to dismiss the adversary complaint. (Dkt. #26)

Presently before the Court are the plaintiffs' four motions for rehearing and reconsideration and their motion to file a second amended complaint. (Dkt. ##95, 98, 101, 104)

Regarding the plaintiffs' motions for reconsideration, the Court finds that the plaintiffs have failed to establish a palpable defect by which the court and the parties have been misled and failed to show that a different disposition of the case must result from a correction thereof. L.B.R. 9024-1 (E.D. Mich.).[1] The motions are therefore denied.

However, in light of certain arguments that the plaintiffs raise in this motion, the Court finds it necessary to supplement and clarify its previous opinion as set forth below.

Because the Court finds that the case was properly dismissed, the Court also denies the plaintiffs' motion for reconsideration of the Court's denial of the plaintiffs' motion for a temporary restraining order. *See also* Tr. of Bench Decision, Dkt. #84 at 16, Sept. 29, 2014 ("Technically [granting the City's motion to dismiss] renders the plaintiffs' Motion for a Preliminary Injunction moot, but the Court concludes that it should be addressed in the alternative here.").

The plaintiffs' motion to file a second amended complaint, filed after the Court dismissed the case, is untimely and therefore must also be denied. *See Clark v. United States*, 764 F.3d 643, 661 (6th Cir. 2014) (citations omitted). Moreover, the only argument in support of this request, which is on the last page of the brief in support of motion for reconsideration and motion

---

[1] Plaintiffs cite to E.D. Mich. Local Rule 7(1)(h). The standard for reconsideration under the Bankruptcy Court's local rule is identical.

to file a second amended complaint (Dkt. #97), does not identify how the proposed second amended complaint would cure any defects in their amended complaint.[2]

The Court concludes the City's motion to dismiss was properly granted, and thus the plaintiffs' several motions for reconsideration must be denied, for the following three reasons:

(1) Under § 904 of the bankruptcy code, except as to the plaintiffs' constitutional claims, this Court lacks the authority to grant the injunctive relief requested. *See* 11 U.S.C. § 904.

(2) While issues arising under § 365 of the bankruptcy code relating to executory contracts do fall within the Court's core jurisdiction, the relationship between DWSD and its customers is not an executory contract. *See* 11 U.S.C. § 365. Moreover, even if the relationship is an executory contract, the relief that the plaintiffs seek is outside of the scope of § 365 and is prohibited by § 904.

(3) Although the plaintiffs' allegations of violations of due process and equal protection are not subject to § 904 because they are constitutional claims, they fail to state claims on which relief can be granted.

Finally, the Court concludes, in the alternative, that the evidence presented at the hearing on September 22 and 23, 2014, does not establish that the Court should grant a preliminary injunction.

---

[2] The amendment that the plaintiffs had previously requested in their response to the defendant's motion to dismiss would also not have cured the defects in the plaintiffs' complaint. The entire basis for that request was to clarify the plaintiffs' use of the word "breach" in their first amended complaint. See Answer and Objection by Pls. to Def.'s Mot. to Dismiss, Dkt. #47-1 at 6 ("If the use of the word 'breach' is confusing or misleading, the Court should permit the pleadings to be amended."). As explained below, the Court's decision to dismiss this adversary proceeding is based on the plaintiffs' failure to state a plausible claim for relief. This decision does not turn upon the Court's interpretation of "breach."

## I. The Complaint

The problems and challenges that the City of Detroit and its residents face run wide and deep. The plaintiffs' adversary proceeding focuses on the alleged failure of the City and DWSD to properly address the inability of a large portion of the City's residents to pay for water service. The complaint contains a number of interesting and creative legal theories in support of the relief that they seek. As explained below, these theories include violations of the plaintiffs' constitutional rights to due process and equal protection, breach of executory contract, public health emergency, estoppel, human right to water, and public trust.

The complaint seeks an injunction: (1) imposing a six-month moratorium on residential water shut-offs; (2) requiring that water service be restored to all residents whose water service has been terminated; and (3) directing the City to implement a water affordability plan with income-based payments for residential customers. The complaint also seeks a declaratory judgment finding that DWSD's policies, procedures and actions relating to notice of bills, dispute of bills, opportunities for payment, and hearings prior to water service shut-offs violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution. *See* U.S. Const. amend. XIV. Finally, the plaintiffs seek declaratory and equitable relief finding that the City's policies, procedures and actions related to the denial, interference or deprivation of the plaintiffs' right to use water are protected by the public trust doctrine, the human right to water, and the laws and Constitutions of Michigan and the United States.

## II. The City's Motion to Dismiss

A motion for permissive intervention was previously filed in this bankruptcy case. (No. 13-53846, Dkt. #6143) That motion was filed so that certain faith-based and charitable organizations could assert their water service rate-related objections to the City's proposed plan

of adjustment. On August 14, 2014, the Court entered an opinion and order denying the motion, holding that § 904 of the bankruptcy code prohibited the requested intervention.

The City's present motion to dismiss this adversary proceeding relies on the Court's previous ruling on the motion to intervene. In that opinion, this Court stated:

> Unlike other chapters of the bankruptcy code, chapter 9 strictly limits the Court's power in a municipal bankruptcy case. This is to ensure that the separation of powers contemplated in the United States Constitution is upheld and the Court does not overstep its bounds into the sovereign powers of states. Thus, section 904 of the bankruptcy code prohibits the Court from interfering with "(1) any of the political or governmental powers of the debtor; (2) any of the property or revenues of the debtor; or (3) the debtor's use or enjoyment of any income-producing property." 11 U.S.C. § 904. This limitation means that the Court cannot interfere with "choices a municipality makes as to what services and benefits it will provide." *In re Addison Cmty. Hosp. Auth.*, 175 B.R. 646, 649 (Bankr. E.D. Mich. 1994) (citing H.R. Rep. No. 595, 398). Further, this provision makes clear that "chapter 9 was created to give courts only enough jurisdiction to provide meaningful assistance to municipalities that require it, not to address the policy matters that such municipalities control." *Id.* Consequently, given the constraints of § 904, the Court does not have the authority to require the DWSD to stop mass water shut-offs, to require that the DWSD refrain from implementing a program of mass water shut-offs in the future, or require the DWSD to implement procedures regarding rate setting or water affordability plans.

(No. 13-53846, Dkt. #6708 at 2)

The City asserts that the opinion and order denying the motion to intervene is correct under § 904 and that there is no basis to reach a different result in this adversary proceeding.

The plaintiffs argue three points in an attempt to save their complaint from the broad reach of § 904. First, they argue that the City's agreement to provide water services to a resident and the resident's agreement to pay for those services constitutes an executory contract over which the court has jurisdiction despite § 904. Second, the plaintiffs argue that the City has

consented to this Court's jurisdiction. Third, they assert that the dispute is within the Court's non-core jurisdiction.

For the reason explained below, the Court rejects each of these arguments.

The Court does conclude that the plaintiffs' constitutional claims are not subject to § 904. Nevertheless, because those allegations fail to state a claim on which relief can be granted, they must be dismissed.

### A. The Plaintiffs' Executory Contract Argument Must Be Rejected

The plaintiffs are correct that despite § 904, the Court retains the complete authority that § 365 gives it. Indeed, the City does not argue otherwise. The parties disagree, however, on whether the arrangement between the City and its water customers constitutes an executory contract.

The Court concludes that the arrangement is not an executory contract, although not for the reasons that the City argues. The City argues that the arrangement is simply a series of one-month term contracts and that after each term is complete, the DWSD has no executory obligations to perform. The Court must reject this argument simply because it does not reflect the reality of the arrangement between the DWSD and its customers.

Rather, the Court concludes that the arrangement is a part of the variety of municipal services the City has determined to provide pursuant to state law and local ordinance. It has undertaken that obligation to its residents pursuant to its governmental powers under law. Specifically, M.C.L. § 117.4b authorizes a city to provide, in its charter, for the installation of water works to provide water service to residents. The Detroit City Charter so provides in § 7-1202.

6

In their brief in support of their motion for reconsideration of the Court's order dismissing their complaint (Dkt. #97), the plaintiffs assert that the Court erred in relying on the City Charter to conclude that the relationship between DWSD and its customers is not an executory contract. On the contrary, the City Charter establishes the very foundation of the City's water services, and the plaintiffs raise no valid objection to the Court's consideration of it.

Moreover, M.C.L. § 123.166 authorizes a municipality to discontinue water service for non-payment. It states:

> A municipality may discontinue water service or sewage system service from the premises against which the lien created by this act has accrued if a person fails to pay the rates, assessments, charges, or rentals for the respective service, or may institute an action for the collection of the same in any court of competent jurisdiction.

Finally, M.C.L. § 141.121 requires that water rates be set at the reasonable cost of delivering the service.

These are not the elements of contract. The City is not a mere private party that has contracted to provide water services. Rather, the arrangement is strictly a matter of law. It is the law that establishes the service, the price for it, and the consequences of failing to pay that price. Section 365 does not authorize the City to assume or reject law. The bankruptcy code, therefore, has nothing to say in this matter.

Accordingly, the plaintiffs' argument that their § 365 claim provides them with an escape from § 904 must be rejected. For the same reason, the plaintiffs' executory contract claim must be dismissed.

### B. The Plaintiffs' Consent Argument Must Be Rejected

The second way in which the plaintiffs seek to avoid the broad sweep of § 904 and this Court's prior ruling is to invoke the explicit exception in § 904 that applies when a municipality

consents to bankruptcy court jurisdiction. Specifically, the plaintiffs argue that the following language, included in the City's Seventh Amended Plan of Adjustment, constitutes the necessary consent: "The City may seek to implement a rate stability program for City residents which program may, among other things, (a) provide a source of funds to mitigate against rate increases, (b) enhance affordability and (c) provide a buffer against delinquent payment." (Dkt. #7502, Seventh Am. Plan, Art. IV, ¶ A1)[3]

This provision cannot reasonably be construed as either express or implied consent to allow the Court to interfere with specific policy matters or procedures under DWSD's control. Although this provision of the now-confirmed plan clearly contemplates the creation of a rate stability program intended to address affordability and late payment issues, it does not bind the City to take any specific actions and it certainly does not invite the Court's jurisdiction over such matters.

### C. The Plaintiffs' Non-Core Jurisdiction Argument Must be Rejected

The third way that the plaintiffs seek to avoid § 904 and this Court's prior ruling is to invoke this Court's non-core jurisdiction. On this point, they are correct that under 28 U.S.C. § 1334(b), the bankruptcy court has jurisdiction over any issue that is "related to" the bankruptcy case.

Nevertheless, the Court must reject the argument, if only because it proves too much. If the plaintiffs are right about the scope and impact of the bankruptcy's "related to" jurisdiction under § 1334, then that section would nullify § 904. It has no such effect. In fact, § 904 provides for quite the opposite result. It states in its opening six words, "Notwithstanding any

---

[3] The City subsequently filed an Eighth Amended Plan of Adjustment, which the Court confirmed. *See* Order Confirming Eighth Amended Plan for the Adjustment of Debts for the City of Detroit, No. 13-53846, Dkt. #8272. The confirmed plan has the same provision. (Dkt. #8045, Eighth Am. Plan, Art. IV, ¶ A1)

power of the court."  Surely this condition includes the bankruptcy court's non-core or "related to" jurisdiction under § 1334(b).  As stated in *Ass'n of Retired Employees of the City of Stockton v. City of Stockton, Cal.* (*In re City of Stockton, Cal.*), 478 B.R. 8, 20 (Bankr. E.D. Cal. 2012), section 904 "is so comprehensive that it can only mean that a federal court can use no tool in its toolkit."

### D. The Plaintiffs' Constitutional Claims Are Not Subject to § 904

As noted, the plaintiffs seek a declaratory judgment that the DWSD's billing and service termination procedures violate the Due Process and Equal Protection Clauses of the United States Constitution.  The gravamen of the due process claim is that the DWSD fails to provide constitutionally adequate notice and fails to make water affordable for its customers.  The gravamen of the equal protection claim relates to differing treatment between "residential" and "commercial" DWSD customers.

The Court concludes that § 904 does not protect the City from the bankruptcy court's jurisdiction over the plaintiffs' constitutional claims because the City does not have the "governmental power" to violate the due process and equal protection mandates of the Constitution.  U.S. Const. amend. XIV; *see also Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 n.54 (1978) (quoting *Milliken v. Bradley*, 433 U.S. 267, 291 (1977)) ("There is certainly no constitutional impediment to municipal liability [under 42 U.S.C. § 1983].  'The Tenth Amendment's reservation of nondelegated powers to the States is not implicated by a federal-court judgment enforcing the express prohibitions of unlawful state conduct enacted by the Fourteenth Amendment.'")  The City must comply with those constitutional mandates.  *See Monell*, 436 U.S. at 690 n.54; *Milliken*, 433 U.S. at 291.  Accordingly, the Court concludes that those claims, unlike the plaintiffs' other claims, do survive the City's § 904 challenge.

### E. The Plaintiffs' Allegations of Constitutional Violations
### Fail to State a Claim on Which Relief Can Be Granted

The City argues that nevertheless the plaintiffs' due process and equal protection allegations fail to state a claim on which relief can be granted and are subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), if the complaint does not set forth a "plausible" claim for relief, it must be dismissed. The Court concludes that the complaint does not state plausible claims for relief.

### 1. The Plaintiffs' Due Process Claim

Previously, the Court found that the plaintiffs do not have a liberty or property interest in receiving water service, let alone a water service rate based on ability to pay. See Tr. of Bench Decision, Dkt. #84 at 13-14, Sept. 29, 2014. However, the arguments that the plaintiffs make in their motions for reconsideration persuade the Court that its previous conclusion on this issue was an overstatement. Based on the City's legal obligation to provide municipal water service to its residents, it is plausible that the plaintiffs could establish a liberty or property right to water service to which procedural due process rights apply. *See, e.g., Memphis Light, Gas & Water Div. v Craft*, 436 US 1, 8 (1978); *Mansfield Apartment Owners Ass'n v City of Mansfield*, 988 F2d 1469, 1474 (6th Cir 1993); *Palmer v. Columbia Gas of Ohio*, 479 F.2d 153 (6th Cir. 1973).

Despite that, the Court nevertheless concludes that the plaintiffs' due process allegations fail to state a claim on which relief can be granted.

Although the plaintiffs may have a liberty or property interest in water service from the City, that is not the end of the due process inquiry. This Court previously observed that in *Herrada v. City of Detroit*, 275 F.3d 553, 556 (6th Cir. 2001), the Sixth Circuit stated:

The Fourteenth Amendment to the United States Constitution prohibits states from depriving citizens of "life, liberty, or property" without "due process of law." A two-step analysis guides our evaluation of procedural due process claims. We must first determine "whether there exists a liberty interest or property interest which has been interfered with by the defendants." Second, if such a deprivation occurred, we must decide whether the procedures that accompanied the interference were constitutionally sufficient.

*Id.* (citations omitted). Accordingly, the Court must also address whether the City's procedures for terminating water service are constitutionally sufficient. The Court concludes that the plaintiffs' complaint does not adequately allege that City's procedures are not constitutionally sufficient.

In the amended complaint filed on July 30, 2014 (Dkt. #3), these are the allegations of due process violations:

123. Terminating water service without sufficient prior notice, without the opportunity for a hearing, or without an effective post termination hearing process, is in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. at 22.

124. The Defendants violated the Due Process Clause of US Const., Amend. XIV through custom, policies and actions, including but not limited to:

a. Systematically terminating water services without providing adequate notice of shutoffs;
b. Systematically terminating water services without providing adequate opportunity for customers to contest the shutoffs;
c. Systematically terminating water services without providing the opportunity for a hearing before customer's water is shutoff;
d. Failing to implement and observe its own bill collection rules, practices and procedures;
e. Failing to implement and observe its own bill payment rules, practices and procedures;
f. Failing to give adequate notice of bills due;

g. Failing to give adequate notice of due dates, deadlines and other dates related to payment of bills and remittance opportunities prior to shutoffs;

h. Failing to give adequate time for the payment of water bills after giving notice of bills due;

i. Failing to provide notice of potential payment plans on final notices;

j. Failing to offer reasonable payment plans to qualifying customers;

k. Failing to provide notice of and/or provide procedures to dispute bills prior to a shutoff; and/or

l. Failing to provide notice of and/or provide an opportunity for a hearing prior to a shutoff.

These allegations have an "everything but the kitchen sink" quality that makes them challenging to parse through. They are also legal conclusions. As a result, under *Twombly* and *Iqbal*, they are insufficient. In *Twombly*, the Supreme Court stated that while a court must accept as true all factual content in the pleading, it is not "bound to accept as true a legal conclusion couched as a factual allegation." 550 U.S. at 555. In *Iqbal*, the Supreme Court stated that a "court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 678.

As challenging as the task may be here, the Court will attempt to parse through the allegations in paragraph 124 and explain why each is insufficient as a matter of law.

In paragraphs 124 a, b, c, f, g, k, and l, the plaintiffs allege that the bills and notices that the DWSD sent were constitutionally inadequate. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted).

The complaint in this case alleges that the plaintiffs received bills, and in some cases, shut-off notices. However, the complaint alleges little or nothing about the content of the notices provided in those bills and the shut-off notices. The complaint certainly alleges no specific facts suggesting that the bills and notices were constitutionally inadequate. That deficiency is enough to require the dismissal of the complaint under Rule 12(b)(6).

The Court concludes, however, that it would not impermissibly stretch the parameters of Rule 12(b)(6) to consider those bills and notices even though they are not within the complaint. In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), the Supreme Court stated, "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." The case law on this point was summarized in Wright and Miller, Federal Practice and Procedure § 1357:

> In determining whether to grant a Federal Rule 12(b)(6) motion, district courts primarily consider the allegations in the complaint. The court is not limited to the four corners of the complaint, however. Numerous cases, as the note below reflects, have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment. These matters are deemed to be a part of every complaint by implication.

*Id*. (footnote omitted).

The plaintiffs submitted their water service bills to the Court as part of the evidentiary hearing on their motion for a preliminary injunction. These bills are certainly integral to the plaintiffs' claim and of unquestioned authenticity. Accordingly, the Court concludes that they

are deemed to be a part of the plaintiffs' complaint and that it is appropriate to consider them in determining the adequacy of the plaintiffs' due process allegations.

These bills and notices give notice of (1) the amount of the bill; (2) the payment due date; (3) the consequence of failing to pay the bill—that water service is subject to disconnection; and (4) the opportunity to dispute the bill by contacting the DWSD. In addition, after a failure to pay, a customer receives a shut-off notice advising the customer that the customer's water service is subject to termination.

The Court must conclude that the specific content of the DWSD bills and notices further establishes that the plaintiffs' due process allegations are insufficient as a matter of law.

In paragraphs 124 d and e, the plaintiffs also allege that the DWSD violates due process by failing to implement and observe its own bill collection and payment rules, practices and procedures. However, the complaint does not identify any specific rule, practice or procedure that the DWSD fails to observe. The complaint is thus inadequate under *Twombly* and *Iqbal*.[4]

In paragraph 124 h, the plaintiffs allege that the DWSD violates due process by failing to give adequate time for the payment of water bills after giving notice of bills due. The difficulty here is that the complaint fails to allege any factual basis for a holding that the time allowed for payment is irrational or that the DWSD is constitutionally required to allow a longer time for payment.

In paragraphs 124 i and j, the plaintiffs allege that the DWSD violates due process by failing to provide notice of potential payment plans on final notices and by failing to offer reasonable payment plans. First, the complaint alleges that most, if not all of the plaintiffs were

---

[4] In this regard, the Court notes that absent from the complaint is any allegation that the City's failure to grant an extension for a service termination when the customer has a medical condition, as its posted rules appear to require, violates due process.

either on a payment plan, were previously on a payment plan and defaulted, or were given an option to enter into a payment plan but did not because the payments were unaffordable. It appears to the Court that these allegations are the crux of the plaintiffs' real due process claim— that the City is constitutionally required to accommodate their inability to pay their water bills. They claim a constitutional right to water service at a price they can afford to pay.[5]

The Court rejects this claim. There is no support for it. Michigan law does not permit a municipality to base its water rates on ability to pay. Rather, as noted above, M.C.L. § 141.121 requires a municipality to set water rates at the reasonable cost of delivering the service. Nothing in the case law suggests that it is unconstitutional for state law to require a municipality to fix the price of a service according to the cost of providing it rather than ability to pay.

The Court therefore reaffirms its previous conclusion that there is no constitutional or fundamental right either to affordable water service or to an affordable payment plan for account arrearages.

In *Zinermon v. Burch*, 494 U.S. 113 (1990), the Supreme Court stated:

> First, the [Due Process] Clause incorporates many of the specific protections defined in the Bill of Rights. A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, *e.g.*, freedom of speech or freedom from unreasonable searches and seizures. Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful actions "regardless of the fairness of the procedures used to implement them." . . . .

> The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. . . . In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*

---

[5] On this point, it is important to note that the plaintiffs have never asserted a constitutional right to free water service, only a right to water service that they can afford.

*Id.* at 125 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)) (other citations omitted).

The plaintiffs' claims, at best, fall into the third category. Nothing suggests that it is arbitrary for the State of Michigan to require its municipalities to set water rates at the reasonable cost of delivering the service. Rather, the substantial costs involved making water service available to customers suggests that it is entirely rational to fix the rates according to those costs rather than ability to pay. In a rate structure based on ability to pay, every dollar that a customer would not pay because of an inability to pay is one more dollar that other customers, or taxpayers, would have to pay. It is not irrational for the state to determine not to permit its municipalities to adopt such an alternative rate structure.

The Court accepts the truth of the plaintiffs' allegation that the inability of the City's residents to pay for water service on a current basis or to make up large arrearages due to past inability to pay is a serious, tragic problem facing the City and some residents. The Court discusses this problem in more detail below in its discussion of the plaintiffs' motion for a preliminary injunction. The Court cannot, however, conclude that the plaintiffs' due process rights were violated when their water service was terminated for failing to pay, even when that failure was due to an inability to pay.

### 2. The Plaintiffs' Equal Protection Claim

The Court also concludes that the plaintiffs' equal protection claim fails. In *Romer v. Evans*, 517 U.S. 620, 631 (1996), the United States Supreme Court addressed the analysis of an equal protection claim. It stated:

> The Fourteenth Amendment's promise that no person shall be denied equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons. We have attempted to reconcile the principle with the reality by

> stating that, if a law neither burdens a fundamental right nor targets
> a suspect class, we will uphold the legislative classification so long
> as it bears a rational relation to some legitimate end.

*Id.*

The plaintiffs allege that the City has not terminated the water service of delinquent commercial customers, or that where there has been a disconnection, the DWSD "failed to terminate services for these enterprises in the manner used for residential consumers." (Am. Compl., Dkt. #3 at 18)

Under *Romer v. Evans*, that is not enough. The plaintiffs do not allege that they have a fundamental right to municipal water service in the sense that the Court must apply a "strict scrutiny" analysis to the DWSD's policies. *See* Am. Compl., Dkt. #3 at 18 ("There is no rational basis for the difference in treatment between residential and commercial water consumers, and these practices are impermissibly discriminatory.").

Further, the plaintiffs do not allege that residential customers are a suspect class for equal protection purposes, nor do they allege any facts or specific arguments establishing that the differing treatment between residential and commercial customers is discriminatory. They simply argue that: 1) there was a time in which numerous commercial customers were behind on their water bills, and the City "failed to terminate services," and "failed to terminate services . . . in the manner used for residential customers;" 2) that it was "only after widespread public criticism" that the City began to pursue collection from delinquent commercial customers, and 3) residential and commercial DWSD customers "receive the same type of services" from the DWSD and are therefore similarly situated. *See* Am. Compl., Dkt. #3 at 18. Hence, the plaintiffs conclude, there is no rational basis for the City's different treatment and the City violated the Equal Protection Clause.

What is missing from the plaintiffs' claim is an articulation of how DWSD's collections policies fail the rational basis test; in other words, they fail to identify what part of DWSD's policy is "not rationally related to a legitimate state interest." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

The Court concludes that the plaintiffs' allegations do not establish a plausible claim for violation of equal protection. Accordingly, the Court concludes that the complaint must be dismissed.

### III. The Plaintiffs' Motion for a Preliminary Injunction

As discussed above, the dismissal of the plaintiffs' complaint and the denial of their motion for reconsideration of the dismissal moots their motion for a preliminary injunction. Nevertheless, the Court concludes that the plaintiffs' arguments should be addressed in the alternative.

### A. The Standards for a Preliminary Injunction

In deciding whether to issue a preliminary injunction, the Court balances the following four factors: 1) whether the movant has a strong likelihood of success on the merits; 2) whether the movant would otherwise suffer irreparable injury; 3) whether issuance of a preliminary injunction would cause substantial harm to others; and 4) whether the public interest would be served by the issuance of a preliminary injunction. *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc). These four factors should be balanced against one another and are not to be treated as threshold requirements for the grant of a preliminary injunction. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).

### B. The Evidence and the Court's Findings of Fact

Exhibits 12 and 107(a)-(h), admitted at the evidentiary hearing, are customer bills. The reverse side of the bill has a paragraph at the bottom captioned "Complaints and Disputes." It states:

> It is the customer's responsibility to inform the utility of any billing dispute. A monthly-billed customer may dispute a bill no later than twenty-eight (28) days after the billing date. After the period to dispute expires, the customer forfeits the right to dispute the bill. All amounts not in dispute are due and payable.
>
> For additional information, you may visit us online at www.dwsd.org.

There was no evidence that customers dispute bills with any significant frequency. Rather, it appears to be rare.

The evidence at the hearing establishes that customers fail to timely pay their water bills for one of three reasons. One, they have the resources to pay but choose not to pay. Two, they have interruptions in their income that temporarily deprives them of the resources to pay. Three, their income is fixed and so low that they are chronically unable to pay all of their bills when due, including their water bills.

To address the problems created by the group that refuses to pay for water service, the City quite properly and justifiably initiated its program to terminate service in order to motivate payment. In this program, water service to thousands of residents was terminated.

In the process, however, the City initially neglected to address the needs of its customers in the second and third groups who cannot pay. That neglect was what motivated the motion to intervene discussed above and this Court's subsequent informal suggestion to the City that it find ways of making its assistance programs more accessible to those customers.

The City then developed and executed its 10 Point Plan. (City Ex. 2) In the Court's judgment, this was a bold, commendable and necessarily aggressive plan. It appears that it has

been generally successful in providing necessary assistance to customers in the group that suffered temporary income reductions, by providing them with time to cure their delinquencies as well as financial assistance in curing their defaults.

It is less clear that the 10 Point Plan will be of any long term benefit to the customers in the third group—those with insufficient income. Because the poverty rate in the City is about 40%, this is likely to be a large group. To address this need, the 10 Point Plan relies on a patchwork combination of charity and public funds. Unfortunately however, there has been no analysis of whether the available resources will be sufficient to address this need over the long term. Section 904 of the bankruptcy code forecloses to the Court the issues of whether and how to address this important and urgent need. Still, the Court urges the City to examine the issue with the sense of urgency that it deserves.[6]

### C. The Plaintiffs Have Not Demonstrated a Substantial Likelihood of Success on the Merits

Even if the claims for which the plaintiffs seek injunctive relief were not dismissed on jurisdictional grounds under § 904, the Court could not find a substantial likelihood of success on the merits because the plaintiffs presented little evidence in support of these claims at the evidentiary hearing. Moreover, the Court has already determined that the plaintiffs' constitutional and executory contract claims lack merit: the relationship between the plaintiffs

---

[6] One other aspect of the DWSD's procedures was addressed in some depth at the hearing. Exhibit 120, Interim Collection Rules and Procedures, sets forth the detailed complaint and shut-off procedures and is available on the DWSD website. The evidence establishes that in one respect, the City no longer follows the procedures that it publishes on its website. It no longer makes personal visits to customers who are in shut-off status. The DWSD now considers this unnecessary and imprudent for its employees. As a result, the DWSD is preparing revised rules and procedures. The plaintiffs do not allege, however, that the DWSD is constitutionally required to perform these personal visits before terminating service and the Court cannot conclude that the City's failure to amend its published rules on its website to conform to its actual practice violates the plaintiffs' due process rights.

and DWSD is not in the nature of an executory contract; the plaintiffs have not adequately alleged due process violations; and the plaintiffs failed to articulate how the differing treatment for residential and commercial DWSD customers fails the rational basis test.

### D. The Plaintiffs' Irreparable Harm

On the issue of irreparable harm, none of the plaintiffs are currently without water service, although some did experience service interruptions in the past. More generally, however, the Court does find that a customer whose water service is discontinued likely does suffer irreparable harm, especially if the service is lost for more than a few days. These harms may include a host of serious and even life-threatening medical conditions, as well as adverse consequences in employment, in personal and family relations, and, for children, at school. Water is necessary to sustain life.

It is however important to pause here to emphasize that these findings about the necessity of water and the irreparable harm that customers may suffer upon termination of their water service do not establish or even suggest that there is a fundamental constitutional right to free or affordable water. In Michigan, we are fortunate that water is plentiful and accessible at its source. There are, nevertheless, costs associated with insuring that it is clean, with transporting and supplying it to customers, and then with transporting it away. There is no enforceable right to free or affordable water, just as there is no such enforceable right to other necessities of life, such as housing, health care, or food.

The City argues that the harm is not irreparable because there are alternative sources available, including purchasing containers of water at local stores. The Court rejects this argument for at least two reasons. First, those sources are much more expensive, and many of

the affected people are already in poverty. Second, it is challenging to commit the time and energy necessary to purchase and transport sufficient quantities of water.

The City also argues that health department records fail to demonstrate any health consequences from the water terminations to date. That appears to be true, as far as it goes. It must be noted nonetheless that those health department record compilations do not appear to be designed to measure the consequences of significant water service terminations in the City. Accordingly, the Court is not prepared to infer from them, as the City suggests, that there have not been any significant health consequences.

### E. The Harm to the City If the Requested Relief Is Granted

The Court concludes that the harm that the City might experience if the requested injunctive relief is granted (assuming the Court had the authority to grant it) would be significant. Justifiably, the City is concerned that a six-month injunction against terminations would increase its customer default rate and would seriously threaten its revenues. The Court so finds even though the City may not execute service terminations during a good part of that time due to freezing weather conditions. The context here is extremely important. Detroit cannot afford any revenue slippage as it begins to implement its Eighth Amended Plan of Adjustment.

The City is also justifiably concerned about the impact that the requested injunction might have in the continuing development of the Great Lakes Water Authority. This Court has already found that this is an important initiative and any threat to it must be considered seriously. If successfully implemented, the Authority could achieve the basic democratic goal of giving all of the customers of the DWSD an opportunity to participate in its governance. It may also result in the implementation of a rate stability program to address long-term water affordability issues. Equally significantly, it also carries the potential to continue and enhance the political

momentum for the kind of regional cooperation that many urban areas have found to be absolutely critical in their economic revitalizations. It was precisely for these reasons that the Court granted Wayne County's motion to refer the matter of regional water governance to mediation.

The plaintiffs' motion for reconsideration argues that this concern has abated because in the meantime, Oakland, Wayne, and Macomb Counties have approved the Great Lakes Water Authority. The Court rejects this argument. Clearly, many issues surrounding the formation of the GLWA remain unresolved. While the Counties' agreement is certainly a positive and significant step, negotiations continue. The Court finds that the injunctive relief that the plaintiffs seek would pose a threat to the successful completion of those negotiations.

### F. The Public Interest

On this issue of the public interest, the Court concludes that it largely overlaps with the interests of the City and region, which the Court has already addressed.

### G. Conclusion

In sum, the Court is faced with an injunction request that is weakly supported by any substantial likelihood of success on the merits, strongly supported by significant evidence of irreparable harm to the plaintiffs, and strongly undermined by significant evidence of harm to the City and the public.

On balance and in the Court's discretion, the Court concludes that the requested injunction would not be justified in the circumstances, assuming that the Court did have the authority to consider it. It would simply be inappropriate to invoke such a significant remedy as an injunction when the likelihood of ultimate success is so remote, even if the harm to the

plaintiffs is otherwise irreparable, especially when the harm to the defendant may also be so substantial.

One final consideration also suggests that the requested injunction should be denied. As noted, the plaintiffs seek a six-month prohibition on water service terminations and a restoration of service for all of the customers whose service was discontinued. Certainly, this would provide short-term relief to those customers whose service would otherwise be terminated or whose service would be restored. However, by itself, this relief solves no long-term problems for customers who chronically cannot pay their bills. The only legitimate purpose that it might serve is as a means to an end. The plaintiffs have not, however, provided the Court with either a clear picture of what that end looks like in six months or a clear roadmap of how to get there. In these circumstances, the Court must conclude that it would be imprudent to grant the injunctive relief that the plaintiffs seek.

Accordingly, the Court would not grant the requested preliminary injunction even if it had the authority to do so.

The plaintiffs' several motions for reconsideration and their motion to file a second amended complaint will be denied. The Court will enter an appropriate order.

For Publication

.

**Signed on November 19, 2014**

_____/s/ Steven Rhodes_____
**Steven Rhodes**
**United States Bankruptcy Judge**
